Joslin Manufacturing Co. 
    et al.
        vs.                    Eq.No.7554
City of Providence

December 14, 1925

BAKER, J. Heard on prayer for preliminary injunction. The evidence introduced at the hearing showed that in November, 1924, the respondent and the Joslin Manufacturing Company entered into a written agreement whereby the said company gave the respondent certain rights and privileges in connection with the laying of a sewer through the Dyerville Pond, so called. In return the respondent paid the Joslin Manufacturing Company a sum of money and agreed, among other things, to furnish electric current and city water to said company free of charge for the period while the respondent

was working on said sewer and had control of said Dyerville Pond, and also agreed to furnish certain fire protection. Upon the completion of the work in question, the respondent agreed to leave the pond in as good condition and of the same capacity as it was at the commencement of the sewer work. It also appeared that the city proceeded to do the work in question during the year 1925 and on October 22nd of that year, notified the Joslin Manufacturing Company that the work had been completed and that the dam gates of the Dyerville Pond should be closed so that the pond could be filled up. The Joslin Manufacturing Company did not fill the pond and, on November 18th, the city sent another letter in which it notified the company that on and after November 25th the respondent would cease to furnish water from the city mains and electric current, and that the temporary connection with the hydrant system would be removed. Thereupon the present proceedings were instituted.

The bill is based chiefly on the allegation that the city has failed to carry out its written contract of November 1924, in that it has failed to leave the pond in as good condition and of the same capacity as it was at the commencement of the sewer work. The bill asks that the respondent be enjoined from ceasing to furnish the complainants without charge water and electric current, and that the respondent further be enjoined from refusing to furnish the fire protection as set out in the bill, and that it be enjoined to continue to maintain the hydrant connection as now established.

The basis of the bill is an alleged breach of the contract in question. The complainants introduced considerable very credible testimony, which tended to show that the pond in question was not left in as good condition as it was at the commencement of said

sewer work. In particular, the complainants contend that one of the banks of the pond, which formerly was firm and solid and covered with more or less growth, has now been left in such a state by the placing upon it of loose material, and particularly of fine sand which was taken from the sewer excavation, which sand has been described as a quick sand or a fast running sand, that said embankment will gradually slide into the pond, reduce its capacity, rile the water and make it entirely unfit for use in the complainants' two mills, viz., the Dyerville Mill and the Merino Mill.

Much testimony was produced which tended to show that if the water in the Dyerville Pond was dirty, riled and sandy, it would be unfit for use in the machinery, boilers and other parts of the Dyerville Mill, and that it would be unfit for use in the Merino Mill for dyeing purposes. Testimony was also offered by the complainants which showed that in many parts of the pond a considerable growth of weeds and grass had taken place during the past summer and that the respondent had made no attempt to clean this out before surrendering the pond at the conclusion of the sewer work, and that such a growth, if left, would be harmful to the water of the pond.

The respondent claims, as is evidenced by its letters, that it has entirely fulfilled its contract of November 1924, and that it only remains for the complainants to fill the Dyerville Pond, and that it is inequitable for them to refuse to do this by reason of their own construction of the contract in question and because of the present condition of the Dyerville Pond. In particular, it argues that in any event, if it has breached the contract, the complainants have a complete and adequate remedy at law to recover damages for such breach, and that they are not entitled to any injunction. The city further claims that the injunction prayed for, while negative in form, is actually a mandatory injunction.

In the judgment of the Court, this last contention is not necessarily conclusive. It is not uncommon to find an instance where an equity court has granted an injunction, negative in form, which in actuality is more or less mandatory, but it is clear that this is only done when the remedy at law is inadequate, and when there is no reason of policy against, and when it is necessary in order to substantial justice between the parties.

American Electrical Works vs. Varley Duplex Marget Co., 26 R. I. 295.

The real question at issue is whether or not, on the bill and on the testimony presented, the complainants have an adequate remedy at law. After giving this matter careful consideration, the Court finds that as to the relief prayed for in connection with the furnishing of water from the city mains to the complainants' mills, and electric power, the complainants have a complete and adequate remedy at law for damages if it should later be found that the respondent has breached the contract in question. On the other hand, if the Court should compel the city by way of injunction to furnish the complainants without charge water and electric power, and thereafter it should be determined that the respondent had committed no breach of the agreement, then the respondent would suffer inequitably because it would be unable in any way to recover the expenditures incurred by reason of the injunction.

It appeared in evidence that the pond could probably be placed in substantially the condition for which the complainants contend for upwards of $3000. It would seem as though the complainants could have this done, if they believe the city has not lived up to its agreement, and then sue the city for whatever they may have had to expend in this connection. If, however, the complainants do not desire to

do this and wish to leave the pond in its present condition, pending future litigation, they may purchase electric power from the company producing the same and buy water from the city, and charge the cost thereof up to the city by way of damages when it is determined whether or not the city has committed any breach of the contract. In other words, it would seem to the Court as though these are definitely ascertainable sums which are capable of being proved by testimony. The Court is clearly satisfied, on the evidence presented, that the complainants will have no difficulty whatsoever in obtaining water or electric current if they so desire. All the parties to the litigation are financially responsible and, in the judgment of the Court, as far as the matter of being furnished power and water is concerned, the complainants have an adequate remedy at law, and, therefore, the injunction as to that form of relief should not be granted.

A large part of the testimony produced by the complainants relating to the condition of the pond, and the probable damage to the complainants in case it should be filled, bears more upon the question as to whether or not there has been a breach of the agreement and, if so, the probable damages following therefrom, than it does upon the question as to whether in equity the complainants are entitled to relief by way of injunction, as they urge.

The complainants contend that as this is a hearing on preliminary injunction, the Court should grant the relief pending a final hearing. If, however, at this time the Court is satisfied from the testimony presented that the remedy at law is complete and adequate, the Court does not believe it should grant even a preliminary injunction.

The complainants also presented for consideration a line of cases in this state which hold substantially that a riparian owner has the right to have the water of a stream flow through or by his land in its natural purity and without appreciable pollution caused by owners above.

Silver Spring Bleaching & Dyeing Co. vs. Wanskuck Co., 13 R. I. 611.

There is, of course, no question about this as a proposition of law. In the opinion of the Court, however, it does not apply to the facts of the case at bar. This is not a dispute between two riparian owners. The basis of the bill is the breach of a certain contract.

As to the matter of the relief prayed for in regard to the maintaining of the hydrant connection as now established and in regard to the furnishing of fire protection as is set out in the agreement of November 1924, it would seem as though a somewhat different situation exists. In the judgment of the Court, these matters are proper grounds for equitable relief at this time under the allegations in the bill and the facts prove. As to these matters, the Court finds that the complainants have no adequate remedy at law. Apparently, if the Dyerville Pond is not filled, then the fire protection for the Dyerville Mill is more or less inadequate. It would appear to the Court that, pending the determination of this litigation, the city should furnish the fire protection required in the agreement in question and should not disconnect the hydrant connection.

In conclusion, therefore, the Court finds that the complainants are entitled to a preliminary injunction restraining the city from disconnecting the hydrant connection as now established and from refusing to respond to an alarm of fire in accordance with the provisions of the agreement in question, but that the complainants not entitled to a preliminary injunction enjoining the respondent from ceasing to furnish the complainants without charge water and electric cur-

rent for use in the mills in question, and as to this latter claim, the complainants' prayer for a preliminary injunction is denied.

For Complainant: James Harris and Alfred G. Chaffee.

For Respondent: Elmer S. Chace, Herbert E. Eklund and Ellis L. Yatman.